2025-10808 Nester Beltran v. Lockheed Martin Corporation We'll hear first from Mr. Woodfield Thank you, Your Honor May it please the Court, opposing counsel Good morning My name is Nicholas Woodfield I'm here on behalf of Appellant Nester Beltran Why don't you move the mic just a bit up I'll also speak up a little bit One of the critical issues here is whether Mr. Beltran engaged in protected activity And the protected activity under the National Defense Authorization Act is one of the three elements that he needs to demonstrate along with that the employer knew about the activity and whether he was retaliated against And I would refer the Court to the record extract And the second page of tab 2, which I'm having a hard time reading the base stamp numbers at the bottom of the stamp numbers, but I believe it's 25-10808-1012 Could you say that again, please, and keep your voice up Yes, sir I'm referring to the second page of tab 2 It is 25-10808-1012, I believe is the page number but it's the second page wherein Mr. Beltran, in an email that he wrote to the head of quality at the F-35 program wherein he said I have been forced to defend myself formally in the execution of my assigned duties which are mandated in the quality inspector job description and in the company's policies, procedures, and planning requirements Inspectors should not have to argue a rejection or work stoppage because of work signed for, but not performed by production poor execution of planning, dismissing planning, or disregarding engineering data These requirements are contractually mandated and paid for by our customer This is the production of the F-35 aircraft that are carrying humans sold airmen above the Middle East today He is saying, I am concerned and I don't think I should be penalized for stopping the line for a rejection or work stoppage because of work signed for, but not performed by production The question as to whether that is a difference of opinion or whether that is a legitimate concern, I think is evident when the consequences of what happens to one of those aircraft if the work is not performed but is signed for is painfully, horribly apparent I would also note that when he raised those concerns to Elizabeth Gelich, who is Lockheed's senior most manager on the F-35 program, or was at the time and its quality director for the F-35 program who was responsible for, quote, the quality management system execution of all F-35 production the statute, 41 U.S.C. 4712 A to G requires that the employee has to raise the concerns to a management official or other employee of the contractor who has the responsibility to investigate, discover, or address misconduct And if not her, then who? And the question then becomes, does it have to become a game of whack-a-mole that he has to keep going up the ladder until eventually he finds the chief executive of the company or someone whose job title is that or can you go to the senior most quality manager for the entire program Those are fact questions that the court said there is no fact question here and therefore there is no protected activity I would also note that the district court said that there was a lack of temporal proximity between his January 6th email Mr. Beltran's January 6th email and his termination, which happened in May Now, there was 75 days between when he sent that email and he was suspended without pay for several months until he was terminated And I would submit in those 75 days that's well within the window for temporal proximity and an employer cannot defeat temporal proximity by saying it was more than 3 months, 4 months, 5 months because you engaged in protected activity on January 1st We put you on an unpaid suspension on February 1st We didn't fire you until December That's well over the time Mr. Woodfield, assuming arguendo that you did meet all the factors of your prima facie case and that temporal proximity is established and assuming that arguendo Could Lockheed still win because it has shown a valid non-discriminatory reason for the adverse employment action and that would be kind of a trump card in the case and we don't do... So can you answer that? Yes, Your Honor The answer is, I believe it's a fact question I'm not just saying that for the lip service of it There was a gentleman named Xavier Jefferson who this matter was raised to for the question of discipline And Xavier Jefferson, when he made the determination that it should be referred to the DRC for a determination of whether Mr. Beltran should be fired he did not look at objective factors and he acknowledged he didn't look at objective factors His standard was, can I get this past the CBA review where if someone looks at the collective bargaining agreement and if it's grieved, can we uphold the determination if it's fired And he makes that subjective determination each time and then he decides what the proposed penalty will be He refers it to this committee that then looks at it and gives him a recommendation back and then he makes whatever determination he would like And so here's the thing He didn't say Mr. Beltran in his deposition He didn't say it was because he had these two elements of discipline within the same period of time or whether one was warranted or not What he said was, I thought this was insubordination and I thought I could get it where it would be supported and qualify past the CBA And that is a subjective standard Now, if there was a policy wherein Lockheed said this is a two-strike ball game You get suspended once, that's your shot Then you come back and you get a fresh start But Mr. Jefferson could very well have said You know, it's a close one I'm going to give him another suspension, this time four weeks And it was entirely within his discretion So to say that Mr. Beltran had disciplined twice or was being disciplined for the same thing within X number of months of each other It looks bad On its face, it looks bad But that was not what Mr. Jefferson said was the reason he terminated me He said it was because this time I thought I could make it stick And what's wrong with that? I need to wait until... Because it's a real hassle And we have to deal with this other group of people who are going to second-guess everything I do And so I want to make sure before I take any action I'm not going to just do it on one insubordination But two insubordinations in four months when you have a lengthy history of other violations of policies I think that's enough And so that's when I'm going to go It's gotten too much to put up with Why is that not a legitimate reason? Because... I'm sorry No, that's okay Because therein lies the rub Mr. Jefferson was also the person Ms. Jellich escalated the protected activity to for an ethics investigation and said, what do you think of this? And he referred it for the ethics investigation And then within two and a half months he made the subjective determine on no objective factors that he could easily have just made the same decision and said, you know, I don't see it this time But the question is what weighed more on his mind the protected activity or the second discipline And that is a fact question If they had followed a progressive discipline policy this would be a different case If Mr. Jefferson said, I used objective criteria and ranked them all out this would be a different case If he was not the person who the protected activity was escalated to this would not be the same case But the problem is... They did dismiss people, though, for insubordination Other people were dismissed for insubordination so it's not like he's being singled out That is true Blocky does terminate people for insubordination but for the same act of insubordination before where Mr. Beltran had not been terminated he was suspended Other people had been suspended for it I bet your second time, though You didn't learn the lesson from being suspended It seems like it's a good thing for your client that he wasn't terminated the first time he could have been terminated for insubordination Not a bad thing This is what goes to the Wheaton case What makes it terminable suddenly when it's following protected activity Or because it was the second time in four months to the same supervisor I would submit that that's a fact question, Your Honor That goes to the very heart of it If I'm complaining to someone on a Monday about Mr. Jefferson and it escalates and Mr. Jefferson, two months later suspends me for the second time using no objective criteria and says, you know, this time I think I can make it stick And it's not guaranteed to stick It's not guaranteed But this time he was willing to take the shot The question then becomes if you've got the decision-maker who's also looking and processing the protected activity then that's a fact question I don't think it's appropriate to say that same decision-maker who's receiving the protected activity referring it for an ethics investigation and making the determination to terminate him for things that you wouldn't have done before It may be a tough row to hoe at trial But it's a fact question Tough rows to hoe are not cases that don't go out It's whether it's a plausible reason If the jury agreed then I believe that they could say Mr. Jefferson exercised his discretionary decision-making because of the protected activity as opposed to the second discipline Or these other people in those situations they hadn't engaged in protected activity So I just I don't think it's as clean as saying 2 months, 3 months, 4 months because then we are in the fact weighing consequence because what if it was 15 months or 19 months We're getting into the Justice Potter, I know pornography when I see it Well, we do have a doctrine about whether or not It works in your favor, actually on the temporal proximity the other way around on your other point that if it's within 3 to 4 months we generally assume it could be but beyond that, it's not Yes, and again it was 75 days to the day from when he raised his protected activity and was suspended and I would submit that the adverse employment action started when he was suspended without pay Now, he may have been terminated in May I do want to take a moment to talk about protected activity because the district court made a determination that it was insufficient evidence to support that he engaged in protected activity So what I want you to do is take the NDAA and what it says about disclosure and what he said in an email that matches up with what the NDAA would say is protected well, what the NDAA would say a disclosure is Yes, Your Honor 41 U.S.C. section 4712 A2G states that an employee of a contractor subcontractor grantee, subgrantee or personal services contractor is protected from discharge demotion or other discrimination as a reprisal for disclosing information that the employee reasonably believes is evidence of gross mismanagement of a federal contractor grant a gross waste of federal funds an abuse of authority relating to a federal contractor grant a substantial or specific public danger to public health or safety or a violation of law, rule, or regulation related to a federal contract Now, I would submit that where I cited you to this language where he said that he is being forced to defend himself and he's complaining that he is being retaliated against because he is raising concerns about and he's having to argue rejections and work stoppages because of work signed for but not performed by production If the name of this contractor was Boeing and not Lockheed Martin we wouldn't be having this conversation right now because Boeing has had massive consequences from that exact behavior from people falling short on their work and you have quality inspectors because planes do not pull over they cannot pull over on the side of the road when they fall from the sky there are catastrophic results when he's saying that there's Am I wrong? Was there some crash at Boeing of an F-35? At Boeing? I'm sorry, not Boeing. Lockheed. Lockheed had a crash of an F-35 he was not speaking specifically to that crash but he was saying my job as a safety inspector is to stop the line when there's a problem and there's an inherent conflict between production and quality inspection because production wants to keep it going and quality is saying stop it and he's saying there's work that's been signed for and it hasn't been performed here that is a significant concern that I think is a dramatic concern of mismanagement of a federal contract where the consequence of these aircraft that cost tens of millions of dollars for the loss of that aircraft hopefully is what would be the consequence not the people on the ground or the people that are in it all of whom would be there this is the sequela of the issue he's raising this is not a simple issue he's raising he is raising the concern of what the sequela of jet aircraft Can you deal with who he reported it to? Jellick being whether or not this is a person that you can report to? Yes, I'm out of time I know Okay, thank you Jellick is the head of quality for the entire program and her testimony is set forth Yes, is she a person that you could report this to such that you've satisfied the requirement? Yes, we believe so but we also believe that if there wasn't that would be a fact question because she is the head of quality for the entire F-35 program I mean, at what point does it become whack-a-mole again as to who he should complain to if he's going four or five levels above himself and he's in quality and he's going to be head of the whole program who should he be going to if not her? That's the top of the pile and under the statute the statute doesn't require that it be just the exact person the statute requires that it be a management official or other employee who has the responsibility to investigate discover or address misconduct Right, there's some issue about whether she was involved in investigating misconduct She referred it to Mr. Jefferson Because she's not the person that investigates misconduct That's in the same way that the President of the United States isn't the person who prosecutes crime because he delegates it She delegated that investigation to Mr. Jefferson Okay, thank you We've saved time for rebuttal, sir We'll hear from Mr. Prude May it please the Court My name is Micah Prude here on behalf of the Appalachian Lockheed Martin Corporation It's undisputed that in December of 2022 and then again a few months later in March of 2023 Mr. Beltran refused to perform tasks that his supervisor ordered him to perform He was suspended for the first instance and fired for the second His narrow claim on appeal is that the obvious reason, the insubordination wasn't why Lockheed Martin fired him but this email that he sent months earlier on January 6th The District Court correctly granted summary judgment on that claim and this Court can and should affirm on any of four independent reasons First, the January 6th email is not protected activity because it wasn't sent to one of the persons described by the statute Second, the email is not protected activity because it doesn't substantively address any of the issues set out in the law Third, Mr. Beltran doesn't have sufficient evidence to present to a jury of causation And finally, Lockheed Martin has proved as a matter of law its affirmative defense under the statute Time permitting, I'll address all four Let me start with the issue of Ms. Jelich since that's been getting the Court's attention this morning Unlike Title VII and other statutes which protect complaints based solely on their substance the NDAA requires your complaint be made to one of seven specified types of persons The only one at issue here is the category of persons with quote, the responsibility to investigate, discover or address misconduct There's no evidence that Ms. Jelich had any of those duties in this case The entirety of Ms. Jelich's duties are set out on page 1022 of the record There are references in the appellant's brief and we heard again this morning this notion that she was the head of quality on F-35 That is not in the record She never testified to that and that was never established anywhere else What she testified to was her that she was a senior manager on quality and she had various quality duties and we agreed she of course had quality duties but whether someone has quality duties says nothing about whether they have responsibility to investigate, discover or address misconduct But if she's a senior manager can't she send it to whoever she needs to send it to? And in fact she did In this case we would not call this a delegation She sent the email on and it went to ethics and said look this is in your remit Ethics needs a look at these issues The fact that she sent it on to someone else we think shows she's not the person who has those responsibilities It's not like she sent it down to one of her subordinates Let's try it this way Who should he have sent it to? This isn't in the record but there's a number of potential people Lockheed Martin has various hotlines including a hotline specifically about government misfeasance and government misconduct That certainly would have been an appropriate method I think perhaps if he had taken this directly to ethics ethics might have the authority to do that But Ms. Jellick we think is undisputed didn't have it This is not a fact issue This is where there's just nothing in the record on that point Because we're here on Rule 56 This is a summary judgment case Summary judgment Was any discovery done? Yes Ms. Jellick's deposition was taken for example That's the excerpt that I quoted And in fact there was a full arbitration So there's quite a bit of a record in this case But more discovery could maybe answer the question of who it is he should have reported it to I don't think necessarily that's the case Discovery was closed Well you're saying he did the wrong person Yes But you don't know who the right person is That's not in the record And the burden's on him to establish that as part of his case That was one of the elements of his case that just wasn't developed by Mr. Beltran before the district court That takes us to the second reason It would seem like you would know who the right person is given the fact that we're at the Court of Appeals in this argument and that's your client And it's been going on for some time But that's okay No, you're right The hotline would have been an appropriate person I can see that would be the case If this had been presented to ethics, for example that would be the case But sending it to this quality manager is just not the right person Okay, can you go on to number two? Yes So the statute of the complaint, as we've heard has five specific categories Each of those is on its face high We're talking not just about mismanagement but gross mismanagement Not just a waste of funds, but a gross waste And we think it's telling that even at this late stage Mr. Beltran has not definitively said which of the prongs he thinks applies On page 23 of his brief he talks about it being a gross waste or a specific danger or illegality A few pages later on page 26 the reference to illegality is dropped and gross mismanagement and abusive authority is added And we think the reason that a specific prong hasn't been identified is because there's nothing in the email that comes close to covering any of those topics The language that my friend mentioned this morning about these contractual requirements Of course that language is in there But when you look at what he was saying about the contractual requirements This isn't, for example, what we had in Boeing where people are saying Look, you're sending out these unsafe planes These things are being done You're breaching the contract You're sending out things that are unsafe Mr. Beltran didn't say that in his email What he was upset about and what he says when you read that sentence in context is if I make a determination that something hasn't been done according to the contract and I stop an inspection or I require it to be redone I shouldn't have to defend my actions In other words, he wants to say My word should be gospel And if I say it wasn't done correctly no one should second-guess me or ask me any questions That sort of dispute is not covered by the statute That's him just saying I want to have the final word He's not saying anything was done in an unsafe manner or was sent out or that Lockheed Martin breached his contract And I would say even further even if he had identified a specific instance where he said This is a breach of the contract The statute, those five categories don't talk about breach of contract It talks about something that has to be gross mismanagement or gross waste of funds And so we think just on its face the email doesn't contain the substance and isn't protected as a matter of law Now, there's an easier, more straightforward way Of course, the NDAA doesn't get litigated very often This Court has very few opinions on it The easiest way to address this case and resolve it is on the causation issue There is simply not sufficient evidence under this Court's well-established precedent to get a fact issue or to create a fact issue on causation The primary way that Mr. Beltran attempts to prove causation is through temporal proximity specifically the temporal proximity between the January 6th email and March 30th which in his brief he repeatedly says is the date that the case was referred to the Disciplinary Review Committee or the DRC There's multiple problems with that argument and they're all fatal First, there's nothing in the record that shows that referral was made on March 30th It's just not in the record Second, the adverse action in this case the only adverse action that's being challenged That's the referral name It's not in the record It was never asked below The first time this came up is during briefing and every time it's been claimed in briefing it's not cited So we don't know why that is being asserted So how much time do you think it was? I would measure it between the firing on May 22nd and January 6th which was when he sent the email to the extent the Court finds the January 6th email Well, that could maybe still be I would push back on that, Chief Judge Elroy We have cases that are 5 months, 4 months, 3 months We've got And I would point the Court to a per curiam decision that Judge Higginbotham, you were on Fisher v. Bilfinger, 2021 Westlaw 527-2214 And there the Court said specifically when you're relying on temporal proximity quote, the interval must be very close and a 3 to 4 month gap does not suffice And it cites the Clark County v. Breeden case which we think stands for that proposition Are you saying we don't have another case that lets you have a 4 month gap? I think if you do have cases where you've got a 4 month gap you also have other evidence that it's not just the gap I think this Court is pretty consistent in saying that the temporal proximity must be very close and 3 to 4 months isn't sufficient In addition, the temporal proximity argument ignores this intervening act of misconduct that everyone agrees occurred And that makes a difference as this Court has explained in Rags v. Mississippi Power These workplace protection rules don't allow complainants to disregard work rules and job requirements Here, there was undisputed instance for the second time where he says I'm not doing this work that my boss tells me to perform We think that makes a difference from a temporal proximity standpoint Well, talking about the incidents where he refused to do work In the first one, he asked for an AVO Yes And they wouldn't give him one Yes They assigned that responsibility to someone else and that person asked for an AVO as well Yes And he got one I would disagree with that, Your Honor Well, he sent an email to the supervisor and said I want an AVO and the supervisor emailed him back and said you got it or go do it or complete it and he took that to mean that's written confirmation from a supervisor authorizing me to go do this work Tan them out to an AVO That's how he interpreted it based on the email he sent So he did Beltran did exactly the same thing He asked for an AVO He was refused one The next employee who was assigned that same responsibility asked for an AVO and arguably got one He certainly received a written instruction I agree with you that far, Judge Griffiths He did That person, Irv Hodges This goes to the comparator argument That's the other way that he tends to establish causation is through comparators Mr. Hodges never refused to do the work Mr. Beltran was told I'm not giving you a written instruction Well, Hodges, when you say he didn't refuse to do the work he said I need an AVO before I do the work and he got it and that's what Beltran said I need an AVO and he got suspended And so if we're looking at this in terms of a I think it's important to draw a distinction requesting written instructions that is not misconduct Lockheed Martin has never taken that position He wasn't fired or disciplined for requesting written instructions He was fired because Mr. Beltran's supervisor said I'm not giving you written instructions Go do this work and Mr. Beltran said I don't care, I'm not doing the work Mr. Hodges emailed his boss, a different supervisor and said, hey boss, can I get an AVO and the language is in the record but his boss just says go and do the work That's the equivalent of Mr. Beltran's boss saying look, you need to go and do this I'm ordering you to do this Well, Hodges actually said the employee who occupies the same position as Beltran he actually said copy, AVO, receive It's unquestionable he interpreted that to be an AVO That is certainly what he said I agree, Your Honor The important part is that he did he then went and did the work The adverse action in this case Well, we don't know whether or not Beltran would have done the work if somebody had sent him an email and said go ahead and do it That could be and he interpreted that as an AVO then he had something in writing He never got Beltran never got that opportunity And what I would say to that, Your Honor is just Mr. Beltran just like all employees at Lockheed Martin he doesn't have a right to demand written instructions He may prefer that He may want that Maybe a different employer would think that's a good thing to do But his supervisor didn't have an obligation to give it to him And the issue about whether he was given a written instruction or not That's not the adverse action The adverse action is the firing So then we get to the second time that Mr. Beltran did it And there's no one in the record who engaged in this misconduct twice Mr. Brugger is his other comparator And it's undisputed that the first time Mr. Brugger refused to do work he was suspended And in fact he received a longer suspension than Mr. Beltran did And so he's not a good comparator for Mr. Beltran in terms of the first act of the first suspension Again, just for context again that first suspension is not before the court because that first suspension occurred before the January 6th email So Mr. Beltran is not claiming that his first suspension was retaliatory The only issue is after the second time that Mr. Beltran refused to do this work He again refused There's no comparator anywhere in the record who refused it twice Mr. Hodges and Mr. Brugger are not appropriate comparators for the additional reason that they didn't have comparable disciplinary histories to Mr. Beltran Chief Judge Elrod, you were asking about that in one of our earlier cases today We've set out on page 4 of our brief Mr. Beltran's extensive disciplinary history including another suspension just a few months before his December suspension in this case And so that's an additional reason that Mr. Hodges and Mr. Brugger are not appropriate comparators And that's all you're left with I guess the remaining way that he has argued about causation is this notion that he was treated differently before and after the alleged protected activity That's where the Wheat case comes in We think Wheat is easily distinguishable In that case, the employer totally changed his explanation It gave a false explanation first and claimed that no one had ever engaged in this misconduct when it turned out that the plaintiff had And the company there, the employer there didn't have any explanation for why it treated this person differently Here, of course, none of those things is true. Lockheed's explanation has always been the same And, in fact, Lockheed Martin has explained why it opted to give Mr. Beltran a lesser form of discipline the first time he did it than the second And so we don't think Wheat has any bearing on this case Can you turn to number 4? The final grounds of this affirmative defense The affirmative defense says that even if the plaintiff proves their case the employer wins if it is able to establish by clear and convincing evidence that there was that it would have taken the same personnel action This Court and others have relied on what's called the Carr Factors And we would argue that each of those was established here as a matter of law The first goes to the existence and strength of the evidence in support of the personnel action Often that is going to be a fact issue But here it's not because Mr. Beltran agrees that he engaged in misconduct He's not disputing it Second is the existence and strength of any motive to retaliate on the part of the decision maker Here the decision maker is Mr. Jefferson And on page 597 and 598 of the record Mr. Beltran admits that he has no reason to suggest that Mr. Jefferson had any reason to be upset by his various safety related complaints I think sort of what we've seen parts of the argument is that Jefferson may have been upset about other aspects of the email But other aspects of the email aren't before the court We have to look at what the protected activity is And Mr. Beltran does have any evidence of Mr. Jefferson having any issues with that And then finally is the question about whether the company has taken similar actions with respect to other employees We think the evidence is unrebutted on that point I'd point the court to Mr. Jefferson's testimony on 730 to 733 of the record and 743 to 744 of the record Can you address the this-time-I-can-make-it-stick argument in the attempt related to the fact that he made the assuming argument that he made the protective activity Yes And that was the issue That's why Mr. That's the explanation for why Mr. Beltran only had a suspension the first time around And it was directly because of this Mr. Hodges incident Mr. Those happened on the same night And Mr. Jefferson who's in a labor relations role and is focused among other things on employee relations employee morale union negotiations said look what happened and Mr. Jefferson's clear about this Mr. Hodges did not get an AVO but he did get a written instruction It happened in the same night These are all sort of close enough I want to give Mr. Beltran the benefit of the doubt I think that under these facts this discipline wouldn't stand up to an arbitration as being It's the just cause standard We've heard that there's no objective standards but it is the just cause standard that arbitrators apply By the time you get to the second situation Mr. Jefferson is now saying we gave you your chance and you came back and almost immediately three months later you did the exact same thing Can you address your friend on the other side's take on it which is different Your friend on the other side says no he's going to go through the trouble and he can make it stick because he's frustrated with him making the complaint and that's he's worth the trouble to him at that point I would say two things One there's nothing in the record that shows that Mr. Jefferson had that mindset at all and two and relatedly what that essentially is is saying maybe Mr. Jefferson was thinking about this Isn't it possible Mr. Jefferson could have done something different Isn't it theoretically within the realm of possibility that he had these things in his mind That's going to be true in every case but that's pure speculation and this court repeatedly says you can't just speculate that maybe the decision maker had a discriminatory or retaliatory motive You have to present something in order to get to a jury and what he's chosen to present here is the temporal proximity and the comparator issue and for the reason I explained we don't think that those are sufficient under this court to well establish precedent Does that answer that question your question Chief Judge Yes, thank you The last thing I will say with the remainder of my time is just to redirect or point the court to its decision again this is on the affirmative defense issue in Monden versus Consolidated Nuclear which we cited in our brief Mr. Beltran has argued that the affirmative defense really can't be established on summary judgment but that case says otherwise There, this court affirmed the application of these factors that the district court had applied at the summary judgment stage and in doing so this court noted that among other things the evidence of the employee's misconduct was quote simply overwhelming here we would say it's not just simply overwhelming it's agreed to it's stipulated so if there ever is a case where this can be decided on summary judgment we think this would be the case but of course the most straightforward is on the causation issue or on the no protected activity issue unless there's other questions from the panel I will cede my remaining nine seconds Thank you Thank you I would beg to differ that we have stipulated that he engaged in insubordination he asked for an AVO the first time he asked for it the second time we agree that he asked for an AVO we don't stipulate he engaged in insubordination that's why we're here the NDA is a remedial statute the scope of which should be construed the protections of which should be construed broadly so that when you have a question of who the person you should complain to it shouldn't be to construe it as narrowly as possible when it says that there's an individual who has authority to address the situation it shouldn't be construed to that means an 800 number that no one knows going to the head of quality going to your second or fifth line authority above you someone who might be able to do something about it is consistent with the NDA's expansive reading in terms of the the temporal proximity again it was 75 days from when he engaged in protected activity and then that he was suspended at that point how long they take be it six days six months to conduct that investigation they shouldn't be able to use that time to say the time for the temporal proximity has run out because they are in complete control of it he's already been put on ice he isn't even getting paid the adverse employment action starts the moment he isn't getting paid can you go back to the point you made at the very beginning of your rebuttal about you don't concede that he was insubordinate no he was once he did not get the document that said you do it he said no and so why isn't that by definition that he was insubordinate it may be for a reason because he had a higher goal and why can you explain that because he believed his job was not to rubber stamp things that were defective even if he's told to right but you're still insubordinate if someone's telling you to do it could be that you're insubordinate about an unjust order but your refusal to do the order when there's someone standing there commanding you to do it is still insubordinate even if you disagree with it its merits and goodness I believe yes by the letter of the law yes but if you had someone who was standing there and said that engine is not attached to that aircraft I refuse to approve it and they said approve it and he said no the question then is is that insubordinate something that should be considered insubordination for discipline and the answer I don't think is no it's technically not agreeing to do what you're told but it's refusing to do something that he thinks is illegal and endangers people right well I mean I understand that you can I mean it's like the Nuremberg defense you know they told me they ordered me to do this bad thing and so I didn't you know and I did it or versus I didn't do it because I'm not going to do an immoral horrible thing but it's technically insubordinate and the question then is whether or not the overriding good is from not doing the thing because it could cause health and safety risks is is excuses that or you know yes I mean I think you could run into that if they said we want you to pour cyanide in the milk for the lunch and he said I'm not going to do it and that that is technically insubordination but I I think that that we're getting into semantic distinctions there he he never thought he was being insubordinate he thought he was doing his job as he was ordered to do I would also point out there have been some issues there was one question in the briefing below about a citation to the Rags case and I there was some confusion over this and I'm bringing this up just to clarify if the and I'll cite this in Lyons versus Katy Independent School in 964 F3rd 298 it's footnote 28 the site in in here and I read it verbatim Rags versus Mississippi Power and Light Code 278 F3rd 472 5th Circuit 2002 open parenthetical noting that a district court in the circle has found that quote a time lapse of 4 months has been found sufficient close quote There's a 4.5 month case also from 2001 Pardon me, ma'am? So, go ahead I was just saying there was It's actually a positive statement for you Yes So there are there's a variety Yes And there was a question of whether that language is actually not in the Rags case but it's in the Lyons case saying it's in the Rags case and we cited to that and so there was some confusion and I wanted to clear that up because I do worry about my reputation And I do finally close in the last 4 minutes by saying he genuinely is my friend although we disagree on litigate strongly against one another for your clients and perhaps as Shakespeare said he drew it together as friends We have your argument Did you have something to add to that? Thank you Thank you very much Thank you We have your argument and we appreciate it and this case is submitted Thank you Thank you Thank you Thank you